**GOLDEN EAGLE, also known as Lee Roy Austine, Appellant,**

v.

**Deputy Sheriff JOHNSON et al., Appellees.**

**No. 72–1820.**

United States Court of Appeals, Ninth Circuit.

March 15, 1974.

---

4. As a result of our disposition we need not reach the other issues raised in Holton's brief.

Raymond Cross (argued), Ukiah, Cal., William P. Lamb, Bruce R. Greene, Berkeley, Cal., for appellant.

Lowell T. Carruth (argued), of McCormick, Barstow, Sheppard, Coyle & Best, Fresno, Cal., Brian G. Taugher, Deputy Atty. Gen., State of Cal. (argued), Nelson P. Kempsky, Deputy Atty. Gen., Sacramento, Cal., for appellees.

Before TRASK and SNEED, Circuit Judges, and LINDBERG,* District Judge.

SNEED, Circuit Judge:

Golden Eagle, also known as Lee Roy Austine, brought this action, pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1988 and 28 U.S.C. § 2201 and § 2202, seeking to have (1) certain laws of the State of California declared unconstitutional, (2) certain criminal proceedings in the California courts enjoined, (3) certain records destroyed, and (4) a recovery of damages from the defendants, who were the officers who arrested Golden Eagle, his jailers, various judges, prosecuting attorneys, and the public defender.

The complaint set forth what was described therein as seven causes of action. The defendants moved to dismiss the entire complaint and this motion was granted except as to the seventh cause of action. In accordance with Rule 54(b), Federal Rules of Civil Procedure, the trial court determined that there was no just reason for delay in the entry of a final judgment with respect to these causes of action and entered a final judgment with respect to them. The issue before us is whether this dismissal of six of the seven causes of action was proper. We hold that it was.

For the purposes of this decision, we assume the truth of the facts as alleged

---

* Honorable William J. Lindberg, Senior District Judge, Western District of Washington, sitting by designation.

in Golden Eagle's complaint. On the evening of July 11, 1970, Golden Eagle was returning from the Navajo Indian Reservation to his home in Los Altos, California in an automobile driven by Patrick Joseph Ryan. In his possession at that time were sacramental peyote, a wooden box containing other religious paraphernalia, and certain drugs sold to him on prescription which were used to treat his epilepsy. Between 10 p. m. and midnight the automobile was stopped by Officers Peters and Heerd of the California Highway Patrol because it lacked a license plate light and because the officers observed "furtive movements" in the vehicle.

After being stopped, Ryan could not provide satisfactory identification and the officers determined that the vehicle belonged to neither Golden Eagle nor Ryan. A search of the vehicle was initiated, allegedly so that the vehicle could be stored. Golden Eagle was asked by an officer what was in the wooden box and he responded by explaining that he was a member of the Native American Church, that the box contained religious paraphernalia, and that he had a constitutional right to use sacramental peyote for religious purposes.

Golden Eagle was handcuffed and forced to kneel on the ground. The officers, assisted by Deputy Sheriffs Hall and Johnson who had reached the scene, then conducted a thorough search of the vehicle without the consent of either Golden Eagle or Ryan. During this search the prescription drugs, the sacramental peyote, and the wooden box containing religious paraphernalia were seized by Hall and Johnson.

Following the search, Golden Eagle and Ryan were transported to the Mojave jail facility at Tehachapi, California. At that time, Golden Eagle again informed members of the Kern County Sheriff's Department that he was a member of the Native American Church and as such he had a right to have sacramental peyote in his possession. Golden Eagle was permitted to call his landlady, and she told jail officials that he was a member of the Native American Church, that his membership could be confirmed by asking a church official whose name she supplied, that he suffered from epilepsy, and that this could be verified by taking him to a nearby hospital. No effort was made by anyone to follow up on these suggestions. About 6:45 a. m. on July 12, 1970, Golden Eagle and Ryan were transferred to the Kern County jail in Bakersfield. Again Golden Eagle's landlady called and made suggestions regarding the manner in which Golden Eagle's membership in the Native American Church and his right to use sacramental peyote could be verified.

The complaint continued by alleging Golden Eagle's incarceration in the Kern County jail for thirty-one days and certain events which allegedly occurred during that period. A recital of these allegations is not necessary here because counsel for Golden Eagle conceded in his brief and in oral argument that only with respect to the first and sixth causes of action was the motion to dismiss improperly granted. Both of these causes are based on the allegations described above. It was acknowledged by counsel for the plaintiff that all criminal charges against the plaintiff had been dropped before trial and that this rendered moot all claims against the judges, prosecuting attorneys and public defender. This disposed of the second and third causes of action. The fourth and fifth causes of action were also recognized as moot except to the extent such causes were also embraced by the first and sixth causes. The seventh cause of action, which involves claims against certain jailers, is not involved in this appeal.

The first cause of action charges that Officers Peters and Heerd, Deputy Sheriffs Hall and Johnson, Deputy District Attorneys for Kern County Robinson, Rostain, and Vandernoor, and Assistant District Attorney for Kern County, Bradshaw arrested, booked, and charged Golden Eagle for violation of § 11910 (superceded by § 11377 of the

1972 California Uniform Controlled Substances Act) of the California Health and Safety Code by possessing peyote, a drug restricted by § 11540 (superceded by § 11363 of the 1972 California Uniform Controlled Substances Act) of the California Health and Safety Code,[1] in bad faith and for the purpose of denying him the right to freely exercise his religion.

The sixth cause of action asserts that Officers Peters and Heerd and Deputy Sheriffs Hall and Johnson deprived Golden Eagle of property without due process of law by seizing and retaining the prescription drugs, the sacramental peyote, and the wooden box and its religious contents.

Precision is given these general allegations by the briefs and oral argument of the counsel for Golden Eagle. In essence, it is Golden Eagle's contention that under the First and Fourteenth Amendments of the Constitution of the United States an arrest for the possession, and the seizure, of peyote should be preceded by an adversary hearing before a judicial officer to determine whether such possession was for a bona fide religious purpose. An alternative pre-arrest and pre-seizure procedure required by these Amendments, asserts Golden Eagle, might be a warrant issued by a judicial officer on the basis of an *ex parte* showing that there is probable cause to believe that the possession and use was not for bona fide religious purposes. At a minimum, Golden Eagle urges that the First and Fourteenth Amendments require an arresting officer to make an effort to check the good faith of the religious claims of one found in possession of peyote before placing him under arrest.

Golden Eagle argues that one of these procedures is necessary to reduce the "chilling effect" of the possibility of arrest on the free exercise of religion by a member of the Native American Church.

He points to the Supreme Court's requirement, fashioned in A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), that an adversary hearing precede seizure of allegedly obscene material as recognition that sensitive procedural tools must be devised to safeguard against the infringement of First Amendment rights. He then asserts that the State of California in People v. Woody, 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964), has recognized that the use of peyote, in the bona fide pursuit of a religious faith, is entitled to First Amendment protection. It follows, he continues, that pre-arrest and pre-seizure sensitive procedural tools also must be designed to minimize interference by the state with the bona fide use of peyote in the exercise of the religious faith of those who accept the teachings of the Native American Church. At least one of the procedural devices, he suggests, is constitutionally required.

Golden Eagle does not contend that his arrest was in any way improper absent such a constitutional requirement. Nor does he, despite the allegation of bad faith in the first cause of action, assert in his briefs or oral argument that the officers and deputy sheriffs believed that his arrest and the seizure of the box and his personal religious articles was unconstitutional. He does, however, assert that in all events the seizure violated the Fourth and Fourteenth Amendments.

As we understand it, the adversary hearing which Golden Eagle would have imposed by the First and Fourteenth Amendments in the context of the facts of this case would have operated to require that the arresting officers take him into "protective custody" and "impound" the articles here seized pending a prompt hearing before a judicial officer to determine whether a bona fide religious purpose exists. Should the de-

---

1. Under the California Uniform Controlled Substances Act peyote is a Schedule I substance, § 11054, and possession of such a substance is made unlawful under § 11350. Planting, cultivating, and harvesting of peyote is proscribed by § 11363.

termination favor the person asserting such purpose, his release and the lifting of the impoundment would follow with the consequence that no record of *arrest* would exist. A contrary determination would lead to arrest and seizure, but it would not, of course, foreclose another determination of the good faith of the religious purpose at later stages of the criminal process.

The warrant procedure, suggested by Golden Eagle as the "second best" protection, envisions an *ex parte* hearing in which the possibility of bona fide use for religious purposes might be shown to be remote in the course of establishing probable cause for arrest or search and seizure. Golden Eagle's least preferable form of protection, a check by the apprehending officers of the good faith of the asserted religious purposes prior to arrest and seizure, also contemplates limited "protective custody" and "impoundment."

We hold the dismissal of the first and sixth causes of action was proper. We start with the proposition that neither the Supreme Court of the United States nor this Court has extended First Amendment protection to the religious use of peyote by the members of any church. *See* Kennedy v. Bureau of Narcotics and Dangerous Drugs, 459 F.2d 415 (9th Cir., 1972). Despite the opportunity that this case provides to pass on this issue, we decline to do so. To reach the issues which this case presents we will assume, without deciding, that the interpretation of the First Amendment appearing in People v. Woody, *supra,* is proper. We do this recognizing that our unwillingness to give an authoritative interpretation of the First Amendment

as it relates to the religious use of a controlled substance such as peyote deprives our holding in this case of the underlying doctrinal commitment necessary to infuse it with maximum authority. Nonetheless, our notions of judicial restraint outweigh this consideration.[2]

It follows from our assumption of the correctness of People v. Woody, *supra,* that we adopt for the purposes of this case the weights assigned to competing values by the California Supreme Court. Thus, the degree of danger to the state arising from the religious use of peyote is assumed by us to be outweighed by freedom of religion as protected by the First Amendment. We also accept, *arguendo,* the California Supreme Court's determinations that the religious use of peyote does not lead to the use of more harmful drugs, that peyote is not used by Indians in place of proper medical care, that its religious use does not corrupt children nor obstruct enlightenment, and that immunity from prosecution for the religious use of peyote will not render impossible the effective enforcement of the narcotics laws of California. Finally, we will assume, but not decide, that People v. Woody, *supra,* affords protection to those who possess and transport peyote on a public street or road when their purpose for doing so is directly to facilitate the exercise of their good faith religious beliefs.

Our task is to confront issues not before the Supreme Court of California in People v. Woody, *supra, viz.* the scope of the unique sensitive procedural rules, if any, which constitutionally must precede the arrest of a person in possession of peyote and a seizure of the peyote and other articles with respect to which a

---

2. Analytically it would be possible for us to avoid assuming the correctness of People v. Woody by framing the issue before us as calling for a decision whether the interpretation of the First and Fourteenth Amendments which that case reflects, it being one not presently accepted by the federal courts, necessarily imposes upon California a burden, derived from the Due Process Clauses of the Fifth Amendment and the Fourteenth Amendment, to provide at least one of the

procedural safeguards urged by the Plaintiff. To so frame the issue, however, would require the examination of perhaps an even more intriguing constitutional issue than that posed to us by Golden Eagle. Because we are very doubtful that the result should be different without regard to the manner in which the issue is framed, we prefer the more conventional framing of the issue which this opinion reflects.

proper "nexus" exists. *See* Warden v. Hayden, 387 U.S. 294, 309, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966).

As already indicated, the authority for the imposition of such unique rules is derived from the restrictions imposed by the Supreme Court of the United States on the seizure of obscene and allegedly obscene material. A Quantity of Books v. Kansas, *supra*; Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Scholars have also suggested that such rules be extended to other First Amendment areas. *See, e. g.*, Monaghan, First Amendment "Due Process", 83 Harv.L. Rev. 518 (1970).

We believe, however, that the unique and sensitive procedures applicable to seizures of allegedly obscene material were designed more for the special purpose of protecting a right of the public than to protect the rights of the person from whom the allegedly obscene material was seized. Seizure of allegedly obscene material prior to any determination of obscenity by means of an adversary hearing will result inescapably in the suppression of large numbers of non-obscene books. The public has a First Amendment right to the unimpeded flow of nonobscene books. The usual safeguards provided by our constitutionalized criminal procedure to an accused can not protect, in the obscenity area, this right of the public. Additional tools are necessary and these have been devised. Mr. Justice Brennan underscored this reason for such tools when he observed, "For if seizure of books precedes an adversary determination of their obscenity, there is a danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." A Quantity of Books v. Kansas, 378 U.S. 205, 213, 84 S.Ct. 1723, 1727, 12 L.Ed.2d 809 (1963).

In this case there is no corresponding right of the public that can not be protected by the usual rules relating to arrest and to search and seizure. The arrest of the plaintiff in this case and the seizure of the peyote does not deprive other members of the Native American Church of the opportunity to practice their faith. There is no allegation in either cause of action before us that the peyote and religious paraphernalia seized from Golden Eagle are necessary to the practice by others of the faith they share with the plaintiff. Other supplies of such articles presumably exist in relative abundance. Any impairment of the free exercise of religion by others that exists flows from the "chilling effect" of the arrest of their fellow worshiper. The issue is whether the First Amendment requires an effort to reduce this "chilling effect" by utilizing any of the special procedures upon which the plaintiff insists.

We derive support for our holding that no such requirement exists from three sources. The first is Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd. 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970), where a three judge district court refused to extend the pre-seizure adversary hearing requirement to arrests of those accused of promoting the sale of obscene material. It was recognized that such arrests have a "chilling effect", but the court correctly observed that an adversary hearing itself would have a similar, or possibly greater, effect. Customary procedural safeguards available to an accused in a criminal proceeding, in the view of the court, were "surely permissible, and very probably preferred vehicles for enforcing bans against obscenity." 305 F.Supp. at 297. At least with respect to arrests for the possession of peyote, this reasoning is very persuasive, if not conclusive. So long as an effort is made to enforce the laws of California relating to peyote, there is no way to avoid a "chilling effect" on those whose use of peyote is entitled to First Amendment protection by reason of People v. Woody. Indeed, as *Milky Way Productions, Inc.* suggests, pre-arrest adversary hearings could be used so indiscriminately as to increase the barriers to the free exercise of religion by the members of the Native

American Church beyond those which exist under present procedures. Given this possibility, surely it is permissible in this area to rely upon customary criminal procedure to provide the means by which constitutional claims are made.

Our second source of support is People v. Woody, *supra*. It *nowhere* indicates that ordinary criminal procedures were to be altered in a questionable effort to reduce further the "chilling effect" of California laws relating to peyote. Nor is there to be found any suggestion that such laws should not be enforced in the interest of eliminating any trace of a chilling effect. In answering the Attorney General's argument that First Amendment protection of the religious use of peyote would involve the courts in a case by case inquiry into the good faith of the religious beliefs of the particular defendant, the court said:

> In so doing, we impose no undue burden upon the trier of fact. We do not doubt the capacity of judge and jury to distinguish between those who would feign faith in an esoteric religion and those who would honestly follow it. 40 Cal.Rptr. at 77, 394 P.2d at 821.

Certainly a belief on the part of the Supreme Court of California that its decision would require the special procedures urged on us by the plaintiff should have been revealed, or at least intimated, at this point. It was not, and that court concluded the portion of its opinion in which the above quotation appears by observing that a factual determination of the bona fides of a religious belief was not a unique judicial burden, it being required in other areas of the law, and did not "intrude into the religious issue at all." 40 Cal.Rptr. at 77, 394 P.2d at 821.

We can not escape the conclusion that the Supreme Court of California assumed that prosecutions for the possession and use of peyote would call for no special or particularly unique procedures. This assumption, of course, is not controlling in this case, but it is highly persuasive.

Its persuasiveness is enhanced by the third source of support for our holding, *viz.* the criminal procedure of California. The requirement of an expeditious hearing before a magistrate, West's Ann.Penal Code, §§ 822, 825, 849, without regard to whether the arrest was with or without a warrant, the opportunity to set aside an indictment or information, West's Ann.Penal Code, § 995, and the procedure provided for securing the return of property improperly seized, West's Ann.Penal Code, § 1538.5, afford assurance that a determination of the good faith of a member of the Native American Church and a return of any sacred objects seized from him can be speedily resolved when the facts permit. These procedures will not yield in all instances a final disposition of the good faith issue. Only a trial on the merits will achieve this. Prior to that event an accused is likely to be released pending trial and thereafter may ensue offers to plead guilty to a lesser offense or, as in this case, a dismissal of charges.

The process that provides these opportunities for reconciling an accused's First Amendment rights regarding the religious use of peyote and the proper interests of law enforcement should not be further refined by requiring either an adversary hearing on the good faith issue prior to arrest or seizure of peyote and related religious articles, a special warrant procedure in which there would be an *ex parte* examination of the probable good faith of the person about to be arrested and searched, or an awkward requirement that officers must make a reasonable effort to confirm an assertion of good faith prior to formal arrest and seizure. With respect to this last alternative, it surely must be recognized that those charged with law enforcement can not be expected to be competent curbside evaluators of the good faith of asserted religious beliefs or the credibility of references supplied by the apprehended individual. To impose upon them duties of this sort, accompanied, as the plaintiff in oral argument suggested, by in-

terim protective custody of the apprehended and impoundment of the peyote, is to impair seriously the ability to enforce the laws relating to the controlled substance, peyote, as applied to those who do not subscribe to the beliefs of the Native American Church. People v. Woody, *supra*, did not hold, nor suggest, that classifying peyote as a controlled substance was unconstitutional per se. An equivalent result should not be reached indirectly by the adoption of superfluous or unworkable procedures preceding arrest and seizure.

█ There remains only the charge that in all events the seizure of the box and Golden Eagle's personal religious articles violated the Fourth and Fourteenth Amendments. It is argued that the arresting officers could not have believed that such articles could aid in conviction. The officers, on the other hand, insist that there was a sufficient nexus between the box and religious articles and the peyote to meet the test laid down in Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966). Although the issue is not entirely free from doubt, we hold that the arresting officers could reasonably believe that these articles would aid in the conviction of Golden Eagle. This being so, it matters not whether these articles are classified as fruits, instrumentalities, or contraband, or mere evidence that would aid in conviction.

The arrest and seizures before us in this case were not improper. The procedures which the plaintiff insists must precede arrest and seizure are not required by the First and Fourteenth Amendments. There existed probable cause for the arrest of Golden Eagle and probable cause to believe that the articles seized would aid in his conviction. In any event, defendants Peters, Heerd, Hall, and Johnson acted in good faith and with probable cause in making the arrest and search under statutes that they believed to be valid. *See* Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966).

Affirmed.